Nos. 25-2642, 25-2663 (consol.)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| CARLIN ANDERSON, *et al.*, | ) | Appeals from the United States |
| | ) | District Court for the Southern |
| and | ) | District of Illinois |
| | ) | |
| LARRY MORSE, *et al.*, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | No. 3:23-cv-00728-DWD |
| v. | ) | No. 3:22-cv-02740-DWD |
| | ) | |
| KWAME RAOUL, in his official | ) | |
| capacity as Attorney General of | ) | |
| Illinois, *et al.*, | ) | The Honorable |
| | ) | DAVID W. DUGAN, |
| Defendants-Appellees. | ) | Judge Presiding. |

**BRIEF OF STATE DEFENDANTS-APPELLEES KWAME RAOUL,
BRENDAN F. KELLY, CRAIG MILLER, AND BRYAN ROBBINS**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

**R. SAM HORAN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-0797 (office)
(312) 405-5354 (cell)
Richard.Horan@ilag.gov

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for State
Defendants-Appellees

*(full caption on following page)*

| | | |
|---|---|---|
| CARLIN ANDERSON and DAVE CLARK, | ) ) ) | Appeal from the United States District Court for the Southern District of Illinois |
| Plaintiffs-Appellants, | ) | |
| v. | ) ) | |
| KWAME RAOUL, in his official capacity as Attorney General of Illinois; BRENDAN F. KELLY, in his official capacity as Director of the Illinois State Police; CRAIG MILLER, in his official capacity as State's Attorney of Cass County, Illinois; and BRYAN ROBBINS, in his official capacity as State's Attorney of Cumberland County, Illinois, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:23-cv-00728-DWD |
| | ) ) | The Honorable DAVID W. DUGAN, |
| Defendants-Appellees. | ) | Judge Presiding. |
| LARRY MORSE and THEODORE RAY BUCK, JR., | ) ) ) | Appeal from the United States District Court for the Southern District of Illinois |
| Plaintiffs-Appellants, | ) | |
| v. | ) ) | |
| KWAME RAOUL, in his official capacity as Attorney General of Illinois; THEODORE HAMPSON, in his official capacity as State Attorney for Williamson County, Illinois; and SEAN FEATHERSTUN, in his official capacity as State Attorney for Jefferson County, Illinois, | ) ) ) ) ) ) ) ) ) ) | No. 3:22-cv-02740-DWD |
| | ) ) | The Honorable DAVID W. DUGAN, |
| Defendants-Appellees. | ) | Judge Presiding. |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................ii

JURISDICTIONAL STATEMENT....................................................................1

ISSUE PRESENTED FOR REVIEW .............................................................3

STATEMENT OF THE CASE ..........................................................................4

State and Federal Restrictions on Firearm Silencers...........................4

Procedural History ...........................................................................................4

SUMMARY OF ARGUMENT ..........................................................................7

ARGUMENT .......................................................................................................9

I.     This court reviews a grant of judgment on the pleadings *de novo*. ......................9

II.    Plaintiffs have not plausibly alleged that the Second Amendment's text covers the possession of silencers.............................9

    A.     Silencers are not "Arms." ...........................................10

    B.     The Second Amendment's text does not implicitly cover the possession of silencers...............................17

        1.     Like other constitutional rights, the Second Amendment right implicitly protects only acts necessary to its exercise.........17

        2.     The possession of silencers is not necessary to the exercise of the Second Amendment right. ...............................24

    C.     If this court vacates the district court's decision, it should remand for further proceedings. .......................27

CONCLUSION ................................................................................................31

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF FILING AND SERVICE

i

Page(s)

**Cases**

*Atkinson v. Garland,*
70 F.4th 1018 (7th Cir. 2023) ................................................................ 30

*Beach Forwarders, Inc. v. Serv. By Air, Inc.,*
76 F.4th 610 (7th Cir. 2023) .................................................................. 9

*Bevis v. City of Naperville,*
85 F.4th 1175 (7th Cir. 2023) ...............................9, 10, 11, 13, 15, 16, 23, 25, 29

*Brown v. Rios,*
696 F.3d 638 (7th Cir. 2012)................................................................. 25

*Citizens United v. FEC,*
558 U.S. 310 (2010) ........................................................................... 20

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ...........................................................9, 11, 12, 15

*Driver v. Marion Cnty. Sheriff,*
859 F.3d 489 (7th Cir. 2017)................................................................. 29

*Duncan v. Bonta,*
133 F.4th 852 (9th Cir. 2025) *(en banc)*................................12, 15, 19, 21, 22, 26

*Elion v. United States,*
155 F.4th 889 (7th Cir. 2025) ............................................................... 20

*Est. of Burford v. Acct. Prac. Sales, Inc.,*
851 F.3d 641 (7th Cir. 2017)................................................................. 28

*Ezell v. City of Chicago,*
651 F.3d 684 (7th Cir. 2011)............................................................. 10, 18

*John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers,*
994 F.3d 602 (7th Cir. 2021)................................................................. 20

*Luis v. United States,*
578 U.S. 5 (2016) ......................................................................... 17, 20

*Mays v. Dart,*
974 F.3d 810 (7th Cir. 2020)................................................................. 25

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ........................................................... 30

*Moore v. Madigan,*
    842 F. Supp. 2d 1092 (C.D. Ill. 2012) ........................................... 30

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. 1 (2022) .................................................5, 9, 9-10, 12, 29

*Oakland Tactical Supply, LLC v. Howell Township,*
    103 F.4th 1186 (6th Cir. 2024) ...........................................14, 19, 22, 26

*Parke v. Raley,*
    506 U.S. 20 (1992) .......................................................................... 21

*People v. Hardy,*
    No. B343746, 2026 WL 1102265 (Cal. Ct. App. Apr. 22, 2026) ........................ 12

*Powers v. Noble,*
    132 F.4th 996 (7th Cir. 2025) ......................................................... 20

*Rocky Mountain Gun Owners v. Polis,*
    121 F.4th 96 (10th Cir. 2024) ......................................................... 19

*Saia v. New York,*
    334 U.S. 558 (1948) ..................................................................15, 16, 20

*Sanchez v. Bonta,*
    No. 24-5566 (9th Cir. argued Nov. 18, 2025) ....................................... 13

*Schimandle v. Dekalb Cnty. Sheriff's Off.,*
    114 F.4th 648 (7th Cir. 2024) ...................................................... 9, 24

*Schoenthal v. Raoul,*
    150 F.4th 889 (7th Cir. 2025) ....................................................16, 29, 30

*State v. Barrett,*
    941 N.W.2d 866 (Wis. Ct. App. 2020) ........................................... 12

*Tully v. Okeson,*
    78 F.4th 377 (7th Cir. 2023) ......................................................... 16

*United States v. Al-Azhari,*
    No. 20-cr-206, 2020 WL 7334512 (M.D. Fla. Dec. 14, 2020) ........................ 12

*United States v. Beaty,*
    No. 22-cr-95, 2023 WL 9853255 (M.D. Fla. Jan. 20, 2023) ........................ 12

*United States v. Berger*,
715 F. Supp. 3d 676 (E.D. Pa. 2024 ................................................................ 12

*United States v. Bradley*,
766 F. Supp. 3d 769 (S.D. Ohio 2025) ............................................................ 12

*United States v. Cox*,
906 F.3d 1170 (10th Cir. 2018) ........................................................... 11, 12, 13

*United States v. Erving*,
164 F.4th 953 (7th Cir. 2026) ......................................................................... 11

*United States v. Gomez*,
159 F.4th 172 (2d Cir. 2025) ........................................................................... 14

*United States v. Hasson*,
No. 19-cr-96, 2019 WL 4573424 (D. Md. Sept. 20, 2019) ................................ 12

*United States v. Jackson*,
555 F.3d 635 (7th Cir. 2009) ........................................................................... 14

*United States v. Jernigan*,
750 F. Supp. 3d 579 (E.D. Va. 2024) .............................................................. 12

*United States v. Lightner*,
No. 24-cr-21, 2024 WL 2882237 (M.D. Fla. June 7, 2024) ............................... 12

*United States v. Manney*,
114 F.4th 1048 (9th Cir. 2024) ....................................................................... 13

*United States v. Owens*,
484 U.S. 554 (1988) ......................................................................................... 21

*United States v. Rahimi*,
602 U.S. 680 (2024) ......................................................................................... 22

*United States v. Royce*,
No. 22-cr-130, 2023 WL 2163677 (D.N.D. Feb. 22, 2023) ............................... 12

*United States v. Rush*,
130 F.4th 633 (7th Cir. 2025) ............................................................. 10, 12, 16

*United States v. Saleem*,
No. 23-4693, 2024 WL 5084523 (4th Cir. Dec. 12, 2024) ...................... 12, 13, 24

*United States v. Scheidt*,
103 F.4th 1281 (7th Cir. 2024) .................................................................. 13, 14

iv

*United States v. Sinclair*,
No. 25-cr-20024, 2026 WL 1169894 (S.D. Fla. Apr. 30, 2026) ........................... 12

*United States v. Sutton*,
127 F.4th 1067 (7th Cir. 2025) ...................................................................... 21

*United States v. Vereen*,
152 F.4th 89 (2d Cir. 2025).................................................................18-19, 22, 26

*United States v. Villalobos*,
No. 19-cr-40, 2023 WL 3044770 (D. Idaho Apr. 21, 2023)................................. 12

**Statutes**

18 U.S.C. § 921 ...................................................................................................... 4

26 U.S.C.
§ 5812 .......................................................................................................... 4
§ 5841 .......................................................................................................... 4
§ 5845 .......................................................................................................... 4

28 U.S.C.
§ 1291 .......................................................................................................... 2
§ 1331 .......................................................................................................... 1
§ 2107 .......................................................................................................... 2

42 U.S.C. § 1983 .................................................................................................... 1

Act of May 8, 1792, 1 Stat. 271........................................................................15, 23

Cal. Penal Code
§ 17210 ........................................................................................................ 4
§ 33410 ........................................................................................................ 4

Del. Code Ann. tit. 11, § 1444 ............................................................................... 4

D.C. Code § 22-4514............................................................................................... 4

Haw. Rev. Stat. § 134-8.......................................................................................... 4

720 ILCS 5/24-1 ......................................................................................... 1, 4, 5, 14

Criminal Code of 1961, 1961 Ill. Laws 1983......................................................... 4

Mass. Gen. Laws ch. 269, § 10A ........................................................................... 4

N.J. Stat. Ann. § 2C:39-3 ....................................................................................... 4

N.Y. Penal Law § 265.02 ................................................................ 4

R.I. Gen. Laws § 11-47-20 ........................................................... 4

**Other authorities**

U.S. Const. amend. II ................................................................... 9

Fed. R. App. P. 4 ......................................................................... 2

Fed. R. Civ. P. 12 ................................................................... 1, 5

Fed. R. Civ. P. 58 ........................................................................ 1

7th Cir. R. 28 .............................................................................. 1

Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Dep't of Just.,
*Firearms Commerce in the United States: Statistical Update 2024* (2024),
http://bit.ly/3Qv93Mr ............................................................ 25

Lilia Chen & Scott E. Brueck, Ctrs. for Disease Control & Prevention,
*Noise and Lead Exposures at an Outdoor Firing Range –
California* (2011), https://bit.ly/4vXEPSw..................................... 27

Philip J. Cook & Jens Ludwig, Nat'l Inst. of Just., *Guns in America:
National Survey on Private Ownership and Use of Firearms* (1997),
https://bit.ly/49baE09 ............................................................ 25

10 *The Dispatches of Field Marshal the Duke of Wellington (1799-1818)*
(John Murray 1838) ............................................................... 15

David Kopel, *The Hearing Protection Act and 'Silencers,'* Wash. Post:
Volokh Conspiracy (June 19, 2017), https://bit.ly/4nbNUTT .......... 26

Colleen G. Le Prell, *Sound Level Suppressors for Firearm Noise Reduction:
Implications for Hearing Conservation*, Hearing Rev. (Nov. 29, 2017),
https://bit.ly/4e6FFG0 ........................................................26-27

Nat'l Shooting Sports Found., *Suppressor Owner Study* (2025),
https://bit.ly/4sVdb5S ............................................................. 25

2 *Public Papers of George Clinton* (Wynkoop Hallenbeck Crawford Co. 1900)........... 15

*Recreational Firearm Noise Exposure*, Am. Speech-Language-Hearing Ass'n,
https://bit.ly/4tuTG5b ............................................................. 26

# JURISDICTIONAL STATEMENT

The jurisdictional statement of Plaintiffs-Appellants Carlin Anderson, Theodore Ray Buck Jr., Dave Clark, and Larry Morse is not complete and correct. As required by 7th Cir. R. 28(b), Defendants-Appellees Kwame Raoul, Brendan F. Kelly, Craig Miller, and Bryan Robbins ("state defendants") provide this statement.

Plaintiffs Anderson and Clark filed a complaint against state defendants in the district court under 42 U.S.C. § 1983, claiming that 720 ILCS 5/24-1(a)(6), which prohibits the possession of firearm silencers, violated their rights under the Second and Fourteenth Amendments to the United States Constitution. *Anderson* Doc. 1.[1] Plaintiffs Buck and Morse filed a separate second amended complaint, the operative one in that action, against Defendants Raoul, Sean Featherstun, and Theodore Hampson under 42 U.S.C. § 1983, similarly alleging that 720 ILCS 5/24-1(a)(6) violated the Second Amendment. *Morse* Doc. 42. The district court had subject matter jurisdiction over plaintiffs' actions under 28 U.S.C. § 1331 because they raised a federal question.

The district court consolidated the actions. *Anderson* Doc. 47; *Morse* Doc. 64. On September 5, 2025, the district court granted judgment on the pleadings under Fed. R. Civ. P. 12(c) to defendants on each of plaintiffs' claims, SA18-19, thereby disposing of all claims against all parties. On September 8, 2025, a separate judgment was entered on the district court docket pursuant to Fed. R. Civ. P. 58.

---

[1] This brief cites entries on the *Anderson* district court docket as "*Anderson* Doc. __," entries on the *Morse* district court docket as "*Morse* Doc. __," and the short appendix as "SA__."

*Morse* Doc. 110.  No motion to alter or amend the judgment was filed.  Anderson and Clark filed a notice of appeal on September 17, 2025.  *Morse* Doc. 111.  Buck and Morse filed a notice of appeal on September 22, 2025.  *Morse* Doc. 115.  Both notices of appeal were timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because they were filed within 30 days of the judgment's entry.  This court has jurisdiction over plaintiffs' appeals from a final judgment under 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

Whether plaintiffs plausibly alleged that the Second Amendment's plain text covers the possession of firearm silencers.

**STATEMENT OF THE CASE**

**State and Federal Restrictions on Firearm Silencers**

For over 60 years, Illinois has prohibited the possession of firearm silencers, defined as "any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm." 720 ILCS 5/24-1(a)(6); *see* Criminal Code of 1961, § 24-1(a)(6), 1961 Ill. Laws 1983, 2028. This restriction is not unique. Seven other States and the District of Columbia have similar laws.[2] The federal government also regulates silencers: anyone transferring one must submit an application containing the transferee's fingerprints and photograph, 26 U.S.C. § 5812(a), and register the device in the transferee's name, *id.* § 5841; *see also* 18 U.S.C. § 921(a)(25) (defining silencer); 26 U.S.C. § 5845(a) (subjecting silencers to application and registration requirements).

**Procedural History**

Plaintiffs are four Illinois residents who allege that they desire to possess silencers. *Anderson* Doc. 1 at 12 ¶¶ 4, 47; *Morse* Doc. 42 at 10 ¶ 52; *id.* at 11 ¶ 61. Even without silencers, however, plaintiffs use firearms in various ways. Morse is "a firearms instructor." *Morse* Doc. 42 at 12 ¶ 62. "Clark regularly engages in hunting and participates in long-range rifle competitions." *Anderson* Doc. 1 at 12 ¶ 48. And Buck and Anderson take part in target practice. *See id.* at 12 ¶ 5; *Morse* Doc. 42 at 11 ¶ 56.

---

[2] *See* Cal. Penal Code §§ 17210, 33410; Del. Code Ann. tit. 11, § 1444(a)(3); D.C. Code § 22-4514(a); Haw. Rev. Stat. § 134-8(a); Mass. Gen. Laws ch. 269, § 10A; N.J. Stat. Ann. § 2C:39-3(c); N.Y. Penal Law § 265.02(2); R.I. Gen. Laws § 11-47-20.

Plaintiffs filed two actions, each alleging that 720 ILCS 5/24-1(a)(6)'s prohibition on silencers violated the Second Amendment, as incorporated against the States by the Fourteenth Amendment, both facially and as applied to them, and seeking declaratory and injunctive relief. *Anderson* Doc. 1 at 13-15 ¶¶ 6-19; *Morse* Doc. 42 at 12-14. Collectively, they named as defendants Illinois Attorney General Kwame Raoul, Illinois State Police Director Brendan F. Kelly, and the State's Attorneys of Cass, Cumberland, Jefferson, and Williamson Counties. *Anderson* Doc. 1 at 3-4 ¶¶ 14-17; *Morse* Doc. 42 at 1-2 ¶¶ 3-5. The district court consolidated the two actions. *Anderson* Doc. 47; *Morse* Doc. 64.

State defendants moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). *Morse* Doc. 68.[3] Their motion explained that plaintiffs' claims failed at the first step of the two-step Second Amendment framework established in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), which asks whether the Second Amendment's plain text covers a plaintiff's proposed conduct. *Morse* Doc. 68 at 4-5. State defendants asserted that the possession of silencers did not explicitly fall within the Amendment's text because silencers were not "Arms." *See id.* at 6-10. And they argued that the Amendment did not implicitly protect silencer possession because silencers were not necessary to exercise the core right to armed self-defense. *See id.*

---

[3] Defendants Featherstun and Hampson filed answers denying liability in *Morse*, *Morse* Docs. 46, 47, but did not join or participate in briefing on state defendants' motion. Plaintiffs' claims against all defendants were substantively identical, *see Anderson* Doc. 1 at 13-15 ¶¶ 6-19; *Morse* Doc. 42 at 12-14, and plaintiffs properly do not argue that the district court erred in entering judgment on their claims against all defendants after granting state defendants' motion.

at 10-13.  The motion did not address *Bruen*'s second step.  *See id.* at 4-13.  State defendants also moved to stay discovery pending the district court's resolution of the Rule 12(c) motion, as that motion raised a "dispositive threshold issue" that could obviate the need for further analysis, such as a historical inquiry at *Bruen*'s second step.  *Morse* Doc. 69 at 2; *see also id.* at 7 (state defendants "reserve[d] the right" to present other arguments at summary judgment if the district court denied the dispositive motion).  Plaintiffs opposed the motion for judgment on the pleadings, *Morse* Docs. 75, 76, but did not oppose the motion to stay discovery, *Morse* Doc. 70 at 1; *Morse* Doc. 72 at 2, which the district court granted, *Morse* Doc. 74.

The district court also granted state defendants' motion for judgment on the pleadings, concluding that plaintiffs had not plausibly alleged "that silencers [were] 'arms' as that term was understood in the eighteenth century."  SA18.  It reasoned that plaintiffs had neither shown that silencers were analogous to arms that had existed historically nor "offer[ed] [any] authority to demonstrate that because a device can accompany or be used in conjunction with [a] basic firearm, it is, whether attached or not, an 'arm' for the purposes of the Second Amendment."  *Id.*  And it noted that, even if plaintiffs had alleged that silencers were potentially "useful," that did not render them constitutionally protected.  *Id.*

Plaintiffs appealed.  *Morse* Docs. 111, 115.

## SUMMARY OF ARGUMENT

The district court correctly held that plaintiffs' claims fail at *Bruen*'s first step, as they have not plausibly alleged that the Second Amendment's plain text either explicitly or implicitly covers their proposed conduct — the possession of silencers.

First, the Amendment's text does not explicitly cover silencer possession because silencers are not "Arms." Plaintiffs do not meaningfully argue otherwise and instead attempt to recast their proposed conduct as the possession of a firearm equipped with a silencer. But that framing conflicts with both precedent — which makes clear that the possession of a firearm does not automatically confer Second Amendment protection on individuals' other activities — and the Framers' decision to limit the Amendment's protection to "Arms," rather than "Arms and accoutrements."

Second, the Amendment does not implicitly protect the possession of silencers. Like other constitutional rights, the Second Amendment right implicitly protects only those ancillary rights necessary to its exercise — not, as plaintiffs contend, any accessories or conduct that facilitate firearms' use or affect their functionality. And plaintiffs have not plausibly alleged that they cannot exercise the Second Amendment right without access to silencers. Their pleadings demonstrate that they can use firearms despite the challenged statute, and national data show that firearm owners do not treat silencers as necessary. Plaintiffs' response — that silencers confer various benefits — is unpersuasive, particularly given the other hearing-protection tools available to achieve those benefits.

Because plaintiffs have not plausibly alleged that the Second Amendment's text covers their proposed conduct, their claims fail at *Bruen*'s first step, and this court should affirm the district court's judgment. If the court disagrees, however, it should remand for further proceedings, rather than granting plaintiffs' request to direct the entry of judgment in their favor. In moving for judgment on the pleadings, state defendants did not waive other potential arguments, including, for example, that the challenged statute is consistent with the Nation's historical tradition of regulation at *Bruen*'s second step. If this court vacates the district court's judgment, it should remand to allow the parties to develop the record and the district court to conduct any required analysis in the first instance.

**ARGUMENT**

**I.     This court reviews a grant of judgment on the pleadings *de novo*.**

This court "review[s] de novo the district court's grant of a Rule 12(c) motion for judgment on the pleadings." *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 654 (7th Cir. 2024). It "may affirm on any basis supported by the record." *Beach Forwarders, Inc. v. Serv. By Air, Inc.*, 76 F.4th 610, 613 (7th Cir. 2023). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Schimandle*, 114 F.4th at 654. Under that standard, "[a] complaint must contain sufficient factual allegations," taken as true, "to demonstrate a plausible entitlement to relief." *Id.*; *see id.* at 652.

**II.    Plaintiffs have not plausibly alleged that the Second Amendment's text covers the possession of silencers.**

The Second Amendment "protect[s] an individual right to keep and bear arms for self-defense." *Bruen*, 597 U.S. at 17. "[L]ike most rights, th[is] right . . . is not unlimited." *Id.* at 21 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). *Bruen* established a two-step framework for assessing the right's scope. *See id.* at 24. At the first step, a court must determine whether the "Amendment's plain text covers [the plaintiff's proposed] conduct." *Id.* If not, the conduct "may be regulated or banned." *Bevis v. City of Naperville*, 85 F.4th 1175, 1197 (7th Cir. 2023); *see Bruen*, 597 U.S. at 24. Only if the proposed conduct implicates the right "to keep and bear Arms," U.S. Const. amend. II, does the court reach *Bruen*'s second step, which requires the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation," *Bruen*,

9

597 U.S. at 24. This appeal is limited to whether plaintiffs plausibly alleged that the possession of silencers implicates the Second Amendment at *Bruen*'s first step — the only issue raised in state defendants' motion for judgment on the pleadings and briefed by the parties below. *See supra* pp. 5-6.

As the district court correctly concluded, plaintiffs' claims fail at *Bruen*'s first step because they have not plausibly alleged that their proposed conduct — the possession of silencers — falls within the Second Amendment's plain text. Silencers are not "Arms," and plaintiffs' effort to circumvent this problem by redefining their proposed conduct as the possession of firearms with silencers gets them nowhere. Nor are silencers implicitly protected as accessories necessary to exercise the Second Amendment right: even taken as true, plaintiffs' allegations do not plausibly show that "the core right" would lose its "mean[ing]" without access to the prohibited devices. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). This court should therefore join the other circuits that have decided the issue in holding that the Second Amendment does not cover silencers.

## A.      Silencers are not "Arms."

The Second Amendment's text does not cover plaintiffs' proposed conduct because silencers are not "Arms." Where a plaintiff challenges a law restricting the possession of a specific item, this court resolves *Bruen*'s first step by determining whether that item is an "Arm[ ] for purposes of the Second Amendment." *Bevis*, 85 F.4th at 1192 (assessing whether "assault weapons and large-capacity magazines" were "Arms"); *accord United States v. Rush*, 130 F.4th 633, 638-41 (7th Cir. 2025)

10

(same for "short-barreled rifles"), *cert. denied*, 146 S. Ct. 985 (2025); *see also United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (same for silencers).

Applying that approach here demonstrates that the possession of silencers does not fall within the Second Amendment's text. *Heller* explained that the historical meaning of "Arms" was "no different from the meaning today": the term referred to "weapons of offence, or armour of defence," or "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." 554 U.S. at 581 (cleaned up). Thus, "the Arms the Second Amendment is talking about are *weapons* in common use for self-defense." *Bevis*, 85 F.4th at 1192 (emphasis added). But a silencer is not a weapon: without an accompanying firearm, an individual cannot "use[ ] [it] in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (cleaned up); *e.g.*, *Cox*, 906 F.3d at 1186 (silencers are not arms). Plaintiffs do not meaningfully dispute — and therefore waive — this point. *See, e.g.*, *United States v. Erving*, 164 F.4th 953, 965 n.5 (7th Cir. 2026) ("Arguments not raised in an opening brief are waived." (cleaned up)). Indeed, they concede that a silencer is not a standalone weapon and "has no purpose other than for use" alongside a firearm. AT Br. 20. In other words, silencers are not themselves "Arms" covered by the Second Amendment's text.

That conclusion is consistent with decisions from the Fourth and Tenth Circuits, as well as numerous other courts across the country. The Tenth Circuit has held that "[a] silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence')," and thus "it can't be a bearable arm protected by the Second

11

Amendment." *Cox*, 906 F.3d at 1186 (cleaned up) (quoting *Heller*, 554 U.S. at 581).

Plaintiffs dismiss *Cox* as "sparsely reasoned" and pre-*Bruen*, AT Br. 32, but it is

unclear what further analysis the Tenth Circuit *could* have performed in reaching

the straightforward conclusion that a silencer is not an "Arm[ ]," and the decision's

reasoning precisely anticipated *Bruen*'s textual first step, *see* 906 F.3d at 1186; *see*

*also Bruen*, 597 U.S. at 19 (noting that "[then-]predominant" approach in courts of

appeals was "consistent with" *Bruen*'s first step); *Rush*, 130 F.4th at 636-38, 645

(following pre-*Bruen* precedent that was consistent with modern framework). *Cox*

also aligns with the Fourth Circuit's conclusion, in an unpublished decision, that,

"[w]hile a silencer may be a firearm accessory, it is not a bearable arm that is capable

of casting a bullet." *United States v. Saleem*, No. 23-4693, 2024 WL 5084523, at *2

(4th Cir. Dec. 12, 2024). And numerous other district and state courts agree.[4]

Plaintiffs identify no basis for this court to break from those decisions.

---

[4] *See United States v. Sinclair*, No. 25-cr-20024, 2026 WL 1169894, at *6 (S.D. Fla. Apr. 30, 2026); *United States v. Bradley*, 766 F. Supp. 3d 769, 780-82 (S.D. Ohio 2025); *United States v. Jernigan*, 750 F. Supp. 3d 579, 588-89 (E.D. Va. 2024); *United States v. Lightner*, No. 24-cr-21, 2024 WL 2882237, at *2-3 (M.D. Fla. June 7, 2024); *United States v. Berger*, 715 F. Supp. 3d 676, 697-702 (E.D. Pa. 2024); *United States v. Villalobos*, No. 19-cr-40, 2023 WL 3044770, at *12 (D. Idaho Apr. 21, 2023); *United States v. Royce*, No. 22-cr-130, 2023 WL 2163677, at *4 (D.N.D. Feb. 22, 2023); *United States v. Beaty*, No. 22-cr-95, 2023 WL 9853255, at *8 (M.D. Fla. Jan. 20, 2023); *United States v. Al-Azhari*, No. 20-cr-206, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020); *United States v. Hasson*, No. 19-cr-96, 2019 WL 4573424, at *4-5 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (2022); *People v. Hardy*, No. B343746, 2026 WL 1102265, at *3 (Cal. Ct. App. Apr. 22, 2026); *State v. Barrett*, 941 N.W.2d 866, 871-73 (Wis. Ct. App. 2020). The *en banc* Ninth Circuit recently reached the same conclusion in *dicta*. *Duncan v. Bonta*, 133 F.4th 852, 868 (9th Cir. 2025) (*en banc*) (silencers are "optional accessories," not "Arms"), *petition for cert. docketed*,

Rather than attempt to demonstrate that silencers are "Arms," plaintiffs seek to characterize their proposed conduct as "the possession of a firearm equipped with a [silencer]." AT Br. 20. They do not cite any authority adopting this approach. *See id.* at 20-21. And, contrary to plaintiffs' proposed methodology, courts (including this court) have analyzed prohibitions on specific items by asking whether those items are "Arms." *Bevis*, for example, assessed whether large-capacity magazines — not firearms equipped with large-capacity magazines — were "Arms." *See* 85 F.4th at 1192-94, 1197. The Fourth and Tenth Circuits took the same approach in challenges to restrictions on silencers. *See Cox*, 906 F.3d at 1186; *Saleem*, 2024 WL 5084523, at *2.

Indeed, this court and others have rebuffed efforts, like plaintiffs', to "invoke the Second Amendment's constitutional protection by describing . . . conduct . . . [at] a high level of generality." *United States v. Manney*, 114 F.4th 1048, 1052 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1151 (2025); *see United States v. Scheidt*, 103 F.4th 1281, 1283-84 (7th Cir. 2024). Thus, *Scheidt*, for example, held at *Bruen*'s first step that a statute prohibiting false statements in purchasing firearms from a federally licensed dealer did not "impose[ ] an unconstitutional barrier to individual gun possession" because it related only "indirectly" to arms-bearing conduct. 103 F.4th at 1284; *see id.* at 1282. The relevant conduct — the only activity forbidden by the

---

No. 25-198 (U.S. Aug. 15, 2025); *see also Sanchez v. Bonta*, No. 24-5566 (9th Cir. argued Nov. 18, 2025) (pending challenge to California statute prohibiting silencers). To state defendants' knowledge, no court has held that the Second Amendment protects the possession of silencers.

statute — was making a false statement related to the purchase, not, more broadly, possessing a firearm while having made such a false statement. *See id.* at 1284; *see also Oakland Tactical Supply, LLC v. Howell Township*, 103 F.4th 1186, 1195-97 (6th Cir. 2024) ("*Bruen*'s approach indicates that in defining a plaintiff's proposed conduct, courts should look to the intersection of what the law at issue proscribes and what the plaintiff seeks to do."), *cert. denied*, 145 S. Ct. 603 (2024). In the same way, the challenged statute here prohibits only the possession of silencers, 720 ILCS 5/24-1(a)(6); plaintiffs remain free, like the challenger in *Scheidt*, to possess any lawful type of firearm. The relevant conduct for *Bruen* purposes is thus the possession of silencers.

Plaintiffs' alternative formulation would radically expand the Second Amendment's scope. The Amendment protects the right to bear arms, but it does not cover all other conduct in which an individual happens to engage while exercising that right. *See, e.g.*, *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009) (Second Amendment did not bar prosecution for "distributing illegal drugs" while bearing arms). Allowing challengers to gerrymander their proposed conduct would enable "virtually every Second Amendment challenge" to any regulation in any way related to firearms to move past *Bruen*'s first step, "rendering [that step] largely superfluous." *United States v. Gomez*, 159 F.4th 172, 176-77 (2d Cir. 2025) (challenger's relevant conduct was the "possession of a firearm *with an obliterated serial number*," not "bare possession of a firearm" (emphasis in original)), *cert. denied*, No. 25-6858, 2026 WL 795188 (U.S. Mar. 23, 2026).

14

Plaintiffs' framing also flouts the Second Amendment's text, which covers "Arms," and not firearm accessories or accoutrements. As explained, *Heller* recognized that "Arms" referred to "*weapons*," such as firearms. 554 U.S. at 581 (emphasis added); *accord Bevis*, 85 F.4th at 1192. And, as the *en banc* Ninth Circuit has detailed, "[a]t the time of ratification, a clear distinction was recognized between weapons themselves, referred to as 'arms,' and accessories of weaponry, referred to as 'accoutrements.'" *Duncan*, 133 F.4th at 867. Accoutrements, like "flint[s], scabbards, holsters, and ammunition containers[,] . . . were distinct from 'arms[,]' . . . and the phrase 'arms and accoutrements' was common." *Id.* (citing 2 *Public Papers of George Clinton* 828 (Wynkoop Hallenbeck Crawford Co. 1900); 10 *The Dispatches of Field Marshal the Duke of Wellington (1799-1818)*, at 495 (John Murray 1838)); *see also, e.g.*, Act of May 8, 1792, §§ 1, 6, 10, 1 Stat. 271, 271-73. "By choosing to protect the right to bear 'arms,' not 'arms and accoutrements,' the Founders constrained the scope of the Second Amendment." *Duncan*, 133 F.4th at 867. "The term 'Arms' thus encompasses most weapons used in armed self-defense, . . . [b]ut [the Second Amendment] does not protect the right to bear accoutrements" — except, as discussed below, *infra* pp. 17-23, those necessary to exercise the Second Amendment right. *Duncan*, 133 F.4th at 867. Plaintiffs' approach would override this distinction, awarding presumptive constitutional protection to any "accessory . . . attached to [a] weapon." *Id.* at 868. That is not "[t]he proper inquiry." *Id.*

Plaintiffs' remaining arguments miss the mark. First, their discussion of *Saia v. New York*, 334 U.S. 558 (1948), merely repackages their argument that silencers

must be protected because they "facilitate" firearm use. AT Br. 20. That argument fails because, as explained below, the sound amplification devices at issue in *Saia* were necessary to the exercise of the First Amendment right to freedom of speech, while the possession of silencers is not necessary to the exercise of the Second Amendment right. *See infra* pp. 17-27. *Saia*'s analysis of the First Amendment's implicit scope, *see* 334 U.S. at 559-62, offers no guidance for interpreting the Second Amendment's plain text. Elsewhere in their brief, plaintiffs assert that the court should disregard *Bevis* because "it addressed an appeal of preliminary-injunction orders." AT Br. 34. *But see id.* at 22, 26-27 (relying on this court's decision concerning a preliminary injunction in *Ezell*). Although *Bevis* acknowledged that additional evidence could alter its "preliminary" factual conclusions as to whether the prohibited items at issue were militaristic, it expressed no doubt about the relevant legal framework. 85 F.4th at 1197. The decision's approach to the *Bruen* analysis thus represents "a fully considered appellate ruling on an issue of law," *Tully v. Okeson*, 78 F.4th 377, 381 (7th Cir. 2023) (cleaned up), and this court has repeatedly relied on it as "circuit precedent," *Rush*, 130 F.4th at 639-40, 639 n.4; *see also, e.g.*, *Schoenthal v. Raoul*, 150 F.4th 889, 913 (7th Cir. 2025), *cert. denied*, No. 25-541, 2026 WL 922526 (U.S. Apr. 6, 2026).

Because silencers are not "Arms," the Second Amendment's plain text does not cover plaintiffs' proposed conduct.

### B. The Second Amendment's text does not implicitly cover the possession of silencers.

Plaintiffs' fallback argument — that, even if the Second Amendment's text does not explicitly cover silencer possession, it does so implicitly, AT Br. 21-33 — also fails. The Second Amendment right, like other constitutional rights, "implicitly protect[s] those closely related acts *necessary* to [its] exercise." *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment) (emphasis added). Courts, including this one, have uniformly agreed that "necessary" means "necessary," with respect both to the Second Amendment and to other constitutional rights. Plaintiffs do not seriously attempt to show that the possession of silencers is necessary to the exercise of the Second Amendment right, instead pressing an alternative rule — that the Amendment covers any conduct "that facilitate[s] [the core right's] exercise," AT Br. 23 — that no court has ever adopted and that would create a circuit split. That argument is meritless, and, under the proper standard, plaintiffs' claims fail.

### 1. Like other constitutional rights, the Second Amendment right implicitly protects only acts necessary to its exercise.

Plaintiffs acknowledge that "[c]onstitutional rights 'implicitly protect those closely related acts *necessary to their exercise*.'" AT Br. 21 (emphasis added) (quoting *Luis*, 578 U.S. at 26 (Thomas, J., concurring in the judgment)). Despite correctly stating this standard, however, plaintiffs immediately depart from it, asserting that the Second Amendment's text implicitly covers conduct or items "designed to affect the functionality or facilitate the use of a firearm." *Id.* This court's decision in *Ezell*

makes clear, however, that the Second Amendment implicitly extends only as far as is necessary to allow individuals to exercise the core right to armed self-defense. That principle is consistent with the holdings of other circuits and with courts' approach to other constitutional rights, and, unlike plaintiffs' nebulous standard, sets a clear, administrable rule. And, to the extent it is relevant, plaintiffs' discussion of the Second Militia Act of 1792 only underscores the point.

*Ezell* establishes that the implicit-protection inquiry looks to whether the conduct or item at issue is necessary to the exercise of the Second Amendment right. In that case, a challenge to a Chicago ordinance prohibiting all firing ranges within city limits, the court reasoned that the Second Amendment implicitly protects a "right to acquire and maintain proficiency in [firearm] use" because "the core right [to armed self-defense] wouldn't mean much without the training and practice that makes it effective." *Ezell*, 651 F.3d at 704; *see id.* at 689-90. Moreover, the court noted that the city apparently "consider[ed] live firing-range training . . . critical to responsible firearm ownership," since a separate ordinance "mandate[d] this training as a condition of lawful firearm possession." *Id.* at 704-05. The court thus recognized an implicit right to train with firearms not because such training would generally "facilitate" firearm use, AT Br. 21, but because it was necessary to give the core Second Amendment right "mean[ing]," *Ezell*, 651 F.3d at 704.

Other circuits take the same approach. The Second Circuit, for example, has held that "ancillary rights are only protected to the extent that they are necessary to the realization of the textually specified right to keep and bear arms." *United States*

18

*v. Vereen*, 152 F.4th 89, 95 (2d Cir. 2025) (cleaned up), *cert. denied sub nom. Perez v. United States*, 223 L. Ed. 2d 536 (2026); *see id.* at 92, 98-99 (statute restricting interstate transport of firearms purchased outside State of residence did not implicate Second Amendment).  The Sixth Circuit has similarly reasoned that conduct that is not "necessary to effectuate [the Second Amendment] right . . . is not [implicitly] protected."  *Oakland Tactical*, 103 F.4th at 1196; *see id.* at 1197-99 (Amendment's text did not implicitly protect rights to commercial firearm training in particular part of town or to long-range training facility).  And the Ninth Circuit has emphasized that "[t]he proper inquiry for an item that is not an arm itself is whether the component or accessory is necessary to the ordinary operation of the weapon," not — as plaintiffs suggest — whether it "is attached to the weapon" or potentially "benefi[cial]."  *Duncan*, 133 F.4th at 868 (large-capacity magazines are "not necessary to operate any firearm" and so not implicitly protected).  This uniform rule reflects the fact that, as the Tenth Circuit observed, "it [would be] inconsistent to conclude that [*Bruen*] step one is a textual analysis and to then take an expansive view . . . to infer concomitant rights that are not present in the language of the Second Amendment."  *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 121 (10th Cir. 2024).

Courts take the same approach with other constitutional rights.  Thus, the First Amendment protects political expenditures because "a restriction on the amount of money a person or group can spend on political communication during a campaign . . . *necessarily* reduces the quantity of expression by restricting the

19

number of issues discussed, the depth of their exploration, and the size of the audience reached," meaning that a ban on "expenditures is . . . a ban on speech." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (cleaned up) (emphasis added). And *Saia* held that the Free Speech Clause prohibited a restriction on sound-amplification devices because "[l]oud-speakers [were at the time] *indispensable* instruments of effective public speech." 334 U.S. at 561 (emphasis added). But the First Amendment does not, for example, exempt the press from generally applicable regulations, even though such an exemption would facilitate speech. *See John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 613 (7th Cir. 2021).

The same pattern extends to other rights. Due process requires that a criminal defendant be competent as a necessary prerequisite for a fair trial, "[b]ut the defendant need not understand everything." *Powers v. Noble*, 132 F.4th 996, 1001 (7th Cir. 2025). Justice Thomas has reasoned that the Sixth Amendment "implies the right to use lawfully owned property to pay for an attorney" because the right to counsel was "originally understood to protect only the right to hire counsel of choice," and that right would be "meaningless" without access to one's assets. *Luis*, 578 U.S. at 25 (Thomas, J., concurring in the judgment); *see id.* at 28 (contrary rule would render core right "a nullity"). That does not mean that the Sixth Amendment implicitly protects any conduct that would facilitate legal representation: for example, "[c]riminal defendants have a [Sixth Amendment] right to a competent lawyer, but not to Clarence Darrow," *Elion v. United States*, 155 F.4th 889, 899 (7th Cir. 2025) (cleaned up) — nor, if they require appointed counsel, to their counsel of

20

choice, *United States v. Sutton*, 127 F.4th 1067, 1070 (7th Cir. 2025).  And "a guilty plea must be both knowing and voluntary" because entering such a plea makes it *impossible* to exercise the constitutional rights to a jury trial, to confrontation, and against self-incrimination.  *Parke v. Raley*, 506 U.S. 20, 28-29 (1992).  Yet those rights do not implicitly protect everything that would in any way facilitate their exercise.  *See, e.g.*, *United States v. Owens*, 484 U.S. 554, 555-56, 559-61 (1988) (no Confrontation Clause violation where an "identifying witness is unable, because of memory loss, to explain the basis for the identification").  Implicitly extending the Second Amendment only where necessary to exercise the core right is thus consistent with how courts treat other constitutional protections.

The implication-by-necessity approach also sets a readily administrable standard.  *Contra* AT Br. 28-29.  If a non-arm item is "necessary for the ordinary functioning of a firearm," it is implicitly covered by the Second Amendment's text; otherwise, it is not.  *Duncan*, 133 F.4th at 866; *see id.* at 866-68.  Plaintiffs disagree, but they rely on a dissenting opinion in *Duncan*.  AT Br. 28-29 (citing *Duncan*, 133 F.4th at 916, 919 (VanDyke, J., dissenting)).  The *en banc* majority in that case had no difficulty applying the rule to determine that, while some form of magazine is necessary for many firearms, a large-capacity magazine is not.  *See* 133 F.4th at 867-68.  Indeed, the facts of this case undercut any line-drawing concern, as plaintiffs do

21

not dispute that silencers are "not . . . strictly necessary to [the] exercise" of the core

Second Amendment right.  AT Br. 23; *see infra* pp. 24-27.[5]

Plaintiffs' proposed standard, in contrast, is "hopelessly indeterminable and

inadministrable."  AT Br. 28 (cleaned up).  An array of conduct or non-arm items

could in theory "facilitate" firearm use to some degree, and any firearm accessory

will in some sense "affect [a firearm's] functionality" — that is the entire point of an

accessory.  *Id.* at 21; *see Duncan*, 133 F.4th at 868.  Firearm users might, for

example, find it more convenient to train at a particular location, *but see Oakland*

*Tactical*, 103 F.4th at 1197-98 (zoning ordinance prohibiting firing range in specific

area did not implicitly implicate Second Amendment's text), or purchase weapons

from particular dealers, *but see Vereen*, 152 F.4th at 98-99 (no implicit right to

purchase firearms in preferred way where alternatives available).  Plaintiffs identify

no limiting principle for how much "facilitat[ion]" or "[e]ffect" is enough to trigger

constitutional protection.

Finally, plaintiffs' discussion of the Second Militia Act of 1792 does not help

their cause.  They argue that that Act supports their rule because it required militia

---

[5]  Plaintiffs note in passing that some firearms are sold with "permanently affixed" silencers.  AT Br. 29.  As an initial matter, the court need not decide the constitutionality of the challenged statute as applied to those products:  no plaintiff alleges any desire to purchase or possess one, *see Anderson* Doc. 1 at 12 ¶¶ 2, 4, 48; *Morse* Doc. 42 at 10 ¶ 52; *id.* at 12 ¶ 63, and since plaintiffs have not shown that the statute is unconstitutional as applied to detached silencers, their facial and as-applied challenges fail, *see United States v. Rahimi*, 602 U.S. 680, 693 (2024) (a facial challenge "requires a [plaintiff] to establish that no set of circumstances exists under which the [challenged statute] would be valid" (cleaned up)).  Regardless, however, individuals cannot confer Second Amendment protection on otherwise-unprotected items simply by attaching them to firearms.  *See supra* pp. 13-15.

members to possess some items that, in plaintiffs' view, facilitated the use of firearms. AT Br. 22-23. As a threshold matter, it is far from obvious that the Act's requirements are relevant to determining what conduct or items the Second Amendment implicitly protects. *Heller* "severed [the] connection" between the Amendment's "prefatory clause, which refers to the Militia, and [its] operative clause, which refers to the right to keep and bear Arms." *Bevis*, 85 F.4th at 1188. And the Act required, for example, that some militia members furnish horses, saddles, and uniforms — none of which plausibly fall within the Second Amendment's plain text. *See* Act of May 8, 1792, § 4, 1 Stat. at 272-73. But, in any event, the requirements that plaintiffs highlight — that each militia member bring a "musket or firelock," a "bayonet," "flints," and "cartridges," *id*. § 1, 1 Stat. at 271 — do not support their expansive view of the Amendment's reach. *Contra* AT Br. 22-23. Those items would be either weapons (the firearms and bayonets) or necessary to use those weapons (the flints and cartridges), and thus potentially covered under state defendants' theory.[6] Thus, contrary to plaintiffs' argument, the Act does not suggest that the Second Amendment's text extends to conduct that merely "facilitate[s]" firearm use. Rather, the text implicitly covers only conduct that is necessary to the exercise of the Second Amendment right.

---

[6] To qualify for presumptive constitutional protection at *Bruen*'s first step, any item would also need to be non-militaristic, as explained in *Bevis*. *See* 85 F.4th at 1199.

### 2. The possession of silencers is not necessary to the exercise of the Second Amendment right.

Applying the correct standard, plaintiffs' allegations do not plausibly demonstrate that silencers are necessary to the exercise of the Second Amendment right. *See Schimandle*, 114 F.4th at 654. Indeed, plaintiffs implicitly concede, as they must, that silencers are not "strictly necessary" to a firearm's function or to armed self-defense. AT Br. 23, 32. After all, "[a] firearm will still be useful and functional without a silencer attached." *Saleem*, 2024 WL 5084523, at *2. Plaintiffs' own experiences and data on silencer ownership nationally confirm this point. And their counterargument — that silencers confer various benefits — does not move the needle.

Plaintiffs' pleadings demonstrate that their inability to possess silencers has not prevented them from using firearms in various ways. Morse serves as "a firearms instructor." *Morse* Doc. 42 at 12 ¶ 62. "Clark regularly engages in hunting and participates in long-range rifle competitions." *Anderson* Doc. 1 at 12 ¶ 48. Buck engages in target practice. *Morse* Doc. 42 at 11 ¶ 56. And although Anderson chooses to forgo hunting without a silencer, the challenged statute has not prevented him from target shooting. *See Anderson* Doc. 1 at 12 ¶ 5. Thus, although plaintiffs might *prefer* to use silencers while using firearms, AT Br. 27-28, they do not *need* silencers to do so.

National data tell the same story: firearm owners do not consider silencers necessary. Although Illinois is not unique in prohibiting silencers, most States have chosen to allow them, *see supra* p. 4, and plaintiffs allege that silencers are "widely

permitted" nationally, *Anderson* Doc. 1 at 7 ¶ 31; *accord Morse* Doc. 42 at 4 ¶ 20.

But, even though there are tens of millions of firearm owners in the United States,[7] as of May 2024, only approximately 3.5 million silencers were registered with the federal government.[8] Even if each silencer belonged to a different firearm owner, those figures would mean that the vast majority of firearm owners do not possess silencers. To be clear, the point is not that silencers are unprotected because they are not in common use. *Cf. Bevis*, 85 F.4th at 1198-99 (common use not based "on numbers alone"). Rather, it is that plaintiffs cannot plausibly demonstrate that silencers are necessary to the exercise of the Second Amendment right when, despite their wide availability, the vast majority of firearm owners choose not to possess or use them.

Plaintiffs' response is unpersuasive. They argue that silencers "facilitate" firearm use in various ways, such as hearing protection and recoil reduction. AT Br. 24-27. But, as discussed, *supra* pp. 17-23, that is the wrong standard, and none of the benefits plaintiffs identify rises to the level of necessity. For example, plaintiffs can

---

[7] *See Brown v. Rios*, 696 F.3d 638, 644 (7th Cir. 2012) (57 million firearm owners in 2004); Philip J. Cook & Jens Ludwig, Nat'l Inst. of Just., *Guns in America: National Survey on Private Ownership and Use of Firearms* (1997), https://bit.ly/49baE09 (44 million in 1994).

[8] Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Dep't of Just., *Firearms Commerce in the United States: Statistical Update 2024*, at 12 (2024), http://bit.ly/3Qv93Mr. Plaintiffs cite a slightly higher figure, 4.5 million as of December 2024, based on an advocacy-organization publication that neither appeared in their complaints nor is properly subject to judicial notice. AT Br. 8-9 (citing Nat'l Shooting Sports Found., *Suppressor Owner Study* 29 (2025), https://bit.ly/4sVdb5S); *see Mays v. Dart*, 974 F.3d 810, 824 (7th Cir. 2020) (declining to take judicial notice of report). Even accepting plaintiffs' figure, however, the conclusion is the same.

still use unsilenced firearms in self-defense, even if a silencer could allow for "greater control . . . and improved accuracy." *Contra* AT Br. 26; *see Duncan*, 133 F.4th at 868 ("The mere fact that an accessory enhances an attribute of a weapon does not bring the accessory within the scope of the Second Amendment's text."). They can still train at firing ranges without silencers, even if "some firearm safety instructors" think that using the devices would improve students' skills. *Contra* AT Br. 12; *cf. Oakland Tactical*, 103 F.4th at 1197-99 (no implicit rights to firing range in particular area or to long-range training facility). And they can still protect their hearing in other ways, even if they believe silencers are the "superior method." *Contra* AT Br. 25 (cleaned up); *cf. Vereen*, 152 F.4th at 98 (no implicit right to purchase firearms in preferred way where alternatives available).

Indeed, plaintiffs' own pleadings and authorities show that silencers are not the only — or even the primary — tools for protecting firearm users' hearing. "The National Institute for Occupational Safety and Health recommends that hunters and shooters use . . . earplugs and earmuffs." *Morse* Doc. 42 at 8 ¶ 38; *accord Recreational Firearm Noise Exposure*, Am. Speech-Language-Hearing Ass'n, https://bit.ly/4tuTG5b (last visited May 4, 2026) ("[H]earing loss is . . . preventable . . . using appropriate hearing protection devices[,] . . . such as earmuffs or earplugs."). As one commentator put it, "[n]o one would ever suggest that a [silencer] is an acceptable replacement for [ear]muffs." David Kopel, *The Hearing Protection Act and 'Silencers,'* Wash. Post: Volokh Conspiracy (June 19, 2017), https://bit.ly/4nbNUTT; *see also* Colleen G. Le Prell, *Sound Level Suppressors for*

*Firearm Noise Reduction:  Implications for Hearing Conservation*, Hearing Rev. (Nov. 29, 2017), https://bit.ly/4e6FFG0 ("[T]he use of a [silencer] alone is not adequate for hearing loss prevention purposes when using an AR-15 or similar rifle.").  And, contrary to plaintiffs' repeated assertions that silencers "are the only method of complete hearing protection that the CDC recommends for firearms," AT Br. 25; *accord id.* at 11, 27, 36, the study they cite noted that "[r]esearch has reported that double hearing protection [with earmuffs and earplugs] can provide the additional noise reduction needed in high noise level environments," such as firing ranges, and recommended "earmuffs and [ear]plugs" — not silencers — for firing-range users.  Lilia Chen & Scott E. Brueck, Ctrs. for Disease Control & Prevention, *Noise and Lead Exposures at an Outdoor Firing Range – California* 6, 13 (2011), https://bit.ly/4vXEPSw; *see id.* at 5 (describing silencers as only potential tool for reducing noise produced by firearm, not only way to protect hearing).  Plaintiffs have not plausibly alleged that silencers are necessary to use firearms safely.

In sum, plaintiffs have not plausibly alleged that the possession of silencers is necessary to the exercise of the Second Amendment right.  As a result, the Amendment's text does not cover plaintiffs' proposed conduct, and their claims fail at *Bruen*'s first step.

### C.    If this court vacates the district court's decision, it should remand for further proceedings.

If this court concludes that plaintiffs have plausibly alleged that the Second Amendment's text covers their proposed conduct, it should remand for further proceedings.  *Contra* AT Br. 37-38 (asking court to direct entry of judgment in

plaintiffs' favor). "It is not unusual or unfair for a defendant who believes he has a solid legal defense to assert that defense first in a Rule 12[ ] motion," and "[f]iling [such a] motion simply does not waive other defenses that may be available to that party." *Est. of Burford v. Acct. Prac. Sales, Inc.*, 851 F.3d 641, 645 (7th Cir. 2017). State defendants took that approach here:  their motion for judgment on the pleadings addressed only *Bruen*'s first step, a "dispositive threshold issue" that, if resolved in their favor, would obviate the need for further proceedings and thereby "conserve judicial resources." *Morse* Doc. 69 at 2; *see Morse* Doc. 68 at 1.  Consistent with that reasoning, state defendants moved to stay discovery pending a ruling on the Rule 12(c) motion.  *Morse* Doc. 69.  Plaintiffs not only did not oppose, *Morse* Doc. 70 at 1; *Morse* Doc. 72 at 2, but *Anderson* plaintiffs also acknowledged that "resolving [state defendants' motion before discovery would] streamline the case, reduce the burden of litigation on the parties and the court, and not unduly prejudice or tactically disadvantage plaintiffs," and that, if the district court "rejected the [Rule 12(c) motion], it [would] be appropriate to provide [state defendants] sufficient time to attempt to justify the [challenged statute]," *Morse* Doc. 72 at 2.  The district court granted the stay, acknowledging that state defendants had advanced a "potentially dispositive" argument.  *Morse* Doc. 74.

That commonsense approach did not "d[id] not waive [state defendants'] other defenses." *Burford*, 851 F.3d at 645.  Indeed, the motion to stay discovery "reserve[d] the right," *Morse* Doc. 69 at 7, if the Rule 12(c) motion was denied, to advance other arguments at summary judgment, including, for example, that the

challenged statute "is consistent with the Nation's historical tradition of firearm regulation" at *Bruen*'s second step, *Bruen*, 597 U.S. at 24; *see also Bevis*, 85 F.4th at 1192-97 (assessing, at *Bruen*'s first step, whether prohibited items could "lawfully be reserved for military use"). This court has recognized that both steps of the *Bruen* inquiry often require developed factual records unavailable at the pleadings stage. *See, e.g.*, *Bevis*, 85 F.4th at 1197 (noting need for record development at *Bruen*'s first step); *Schoenthal*, 150 F.4th at 899, 901, 921 (addressing *Bruen*'s second step at summary judgment and relying in part on expert evidence). If this case proceeds, the court should remand for development of such a record.

Plaintiffs identify no persuasive reason to depart from this approach, which they acknowledge would "ordinarily" be appropriate. AT Br. 37. They assert that, as a factual matter, silencers are commonly used by ordinary people for self-defense, rather than serving predominantly military purposes, *id.* at 35-37, and thus are not disqualified from constitutional protection by *Bevis*, *see* 85 F.4th at 1192-97 (predominantly militaristic items unprotected). But that separate issue, which was not raised below, is "not properly before" the court in this appeal, which concerns only the grant of a motion for judgment on the pleadings on an independent ground. *See, e.g.*, *Driver v. Marion Cnty. Sheriff*, 859 F.3d 489, 495 (7th Cir. 2017) (declining to reach issue not addressed by district court). State defendants have had no opportunity to present relevant evidence, and the district court has not addressed plaintiffs' arguments. *See Bevis*, 85 F.4th at 1197 (noting need for factual development and district-court analysis). And while plaintiffs appear to contend that

state defendants cannot prevail at *Bruen*'s second step if the court rejects their first-step arguments, AT Br. 37-38, many regulations that implicate the Second Amendment at the first step will nonetheless pass constitutional muster at the second, *see, e.g.*, *Schoenthal*, 150 F.4th at 899, 906.

Nor does *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), support a different approach. *Contra* AT Br. 38. The plaintiffs in that case appealed not only the grant of a motion to dismiss but also the denial of their motion for preliminary or permanent injunctive relief; in briefing the latter motion, the parties had developed a factual record. *See* 702 F.3d at 934; *Moore v. Madigan*, 842 F. Supp. 2d 1092, 1095-96, 1108-09 (C.D. Ill. 2012), *rev'd*, 702 F.3d 933. After concluding that the plaintiffs had stated a claim, this court directed the entry of judgment in their favor because there was no need for further record development and the plaintiffs had shown an entitlement to relief. *See* 702 F.3d at 942. Here, in contrast, the parties have not yet presented any evidence, and plaintiffs have not shown any entitlement to relief. Thus, if this court vacates the decision below, it should decline plaintiffs' invitation to short-circuit the ordinary litigation process, and instead remand for further proceedings in the district court, which "is best suited to conduct the [*Bruen*] analysis in the first instance." *Atkinson v. Garland*, 70 F.4th 1018, 1023 (7th Cir. 2023).

## CONCLUSION

For these reasons, state defendants-appellees request that this court affirm the

district court's judgment.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
/s/ R. Sam Horan                        Solicitor General
**R. SAM HORAN**
Assistant Attorney General              115 South LaSalle Street
115 South LaSalle Street                Chicago, Illinois 60603
Chicago, Illinois 60603                 (312) 814-3000
(312) 793-0797 (office)
(312) 405-5354 (cell)                   Attorneys for State
Richard.Horan@ilag.gov                  Defendants-Appellees

May 4, 2026

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 7,733 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

/s/ R. Sam Horan
R. SAM HORAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-0797 (office)
(312) 405-5354 (cell)
Richard.Horan@ilag.gov

# CERTIFICATE OF FILING AND SERVICE

I certify that on May 4, 2026, I electronically filed the foregoing Brief of State Defendants-Appellees Kwame Raoul, Brendan F. Kelly, Craig Miller, and Bryan Robbins with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that all participants in this appeal are registered CM/ECF users and will be served via the CM/ECF system.

/s/ R. Sam Horan
R. SAM HORAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-0797 (office)
(312) 405-5354 (cell)
Richard.Horan@ilag.gov