# Cooper & Kirk

Lawyers

A Professional Limited Liability Company

David H. Thompson
dthompson@cooperkirk.com

1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036

(202) 220-9600
Fax (202) 220-9601

July 1, 2026

<u>**VIA ELECTRONIC FILING**</u>

Christopher Conway, Clerk
U.S. Court of Appeals for the Seventh Circuit
219 S. Dearborn Street, Room 2722
Chicago, IL 60604

> Re: ***Carlin Anderson, et al. v. Kwame Raoul, et al.*, No. 25-2642,**
> **Appellants' Citation of Supplemental Authority Under Rule 28(j)**

Dear Mr. Conway,

The U.S. Court of Appeals for the Fifth Circuit has now held that suppressors are "Arms" covered by the Second Amendment. *United States v. Comeaux*, No. 24-30307, 2026 WL 1758170 (5th Cir. June 18, 2026) (attached as Exhibit A).

The Fifth Circuit explained suppressors are "arms" covered by the Second Amendment's plain text because they are "used in self-defense 'to cast at or strike another,'" *id.* at *3, as they reduce loudness, reduce recoil, increase accuracy, and promote quicker follow-up shots and thus perform "critical functions that make firearms both safer and more effective for their core lawful purpose of self-defense." *Id.* The Fifth Circuit also correctly noted that the Supreme Court held in *Bruen* that "Second Amendment 'Arms' need not be *necessary* for a firearm's functioning but instead must only '*facilitate* armed self-defense.'" *Id.* at *4. The Fifth Circuit thus rejected the Ninth Circuit's contrary approach. *Cf. Duncan v. Bonta*, 133 F.4th 852, 867-68 (9th Cir. 2025) (en banc).

# Cooper & Kirk
### Lawyers

The Fifth Circuit's decision confirms the correctness of Appellant's argument that suppressors are "arms" because they are designed to facilitate the use or affect the functionality of firearms. *See* Opening Br., Doc. 16 at 21-33 (Nov. 3, 2025); Reply Br., Doc. 44 at 8-19 (June 10, 2026). This Court should join the Fifth Circuit in concluding that suppressors are covered by the plain text of the Second Amendment.

Respectfully submitted,

/s/ David H. Thompson

| | |
|---|---|
| | David H. Thompson |
| Stephen D. Stamboulieh | Peter A. Patterson |
| STAMBOULIEH LAW, PLLC | Athanasia O. Livas |
| P.O. Box 428 | Jack Tucker |
| Olive Branch, MS 38654 | COOPER & KIRK, PLLC |
| Tel: (601) 852-3440 | 1523 New Hampshire Avenue, N.W. |
| stephen@sdslaw.us | Washington, DC 20036 |
| | Tel: (202) 220-9600 |
| Alan Alexander Beck | dthompson@cooperkirk.com |
| LAW OFFICE OF ALAN BECK | |
| 2692 Harcourt Drive | David G. Sigale |
| San Diego, CA 92123 | LAW FIRM OF DAVID G. SIGALE, P.C. |
| Tel: (619) 905-9105 | 55 West 22nd Street, Suite 230 |
| alan.alexander.beck@gmail.com | Lombard, IL 60148 |
| | Tel: (630) 452-4547 |
| *Attorneys for Plaintiffs-Appellants* | dsigale@sigalelaw.com |
| *Larry Morse and Theodore Ray Buck Jr.* | |
| | *Attorneys for Plaintiffs-Appellants* |
| | *Carlin Anderson and Dave Clark* |

cc: All counsel of record (via Appellate CM/ECF System)



# EXHIBIT A

# United States Court of Appeals
# for the Fifth Circuit

No. 24-30307

United States Court of Appeals
Fifth Circuit

**FILED**

June 18, 2026

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Brennan James Comeaux,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:23-CR-183-1

Before Smith, Clement, and Duncan, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Brennan Comeaux was charged with possessing an unregistered silencer in violation of 26 U.S.C. § 5861(d). He moved to dismiss the indictment, asserting that § 5861(d) violates the Second Amendment facially and as applied to him. The district court denied the motion. Comeaux entered a conditional guilty plea that preserved the right to press his constitutional challenge on appeal.

While his appeal was pending, a different panel decided *United States v. Peterson*, 161 F.4th 331 (5th Cir. 2025), *cert. denied*, 224 L. Ed. 2d 501

No. 24-30307

(2026), which upheld a § 5861(d) conviction because § 5861(d) did not burden the defendant's Second Amendment rights.

Though silencers are Second Amendment "Arms," Comeaux has not alleged that the National Firearms Act's ("NFA") shall-issue regime has been put toward abusive ends. Because *Peterson* controls, he has therefore not shown that his Second Amendment rights have been violated. We affirm.

I.

After arresting Comeaux for unlawfully discharging a firearm, sheriff's deputies executed a search warrant on Comeaux's residence, seizing multiple firearms, suspected silencers, and other firearm-related paraphernalia. The sheriff's department then contacted the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which determined that the suspected silencers were consistent with a "device for silencing, muffling, or diminishing the report of a portable firearm." Comeaux admitted to an ATF agent that he manufactured and possessed the silencers.

A federal grand jury charged Comeaux with possessing an unregistered firearm, in violation of § 5861(d), and possessing a firearm unidentified by a serial number, in violation of § 5861(i). Both counts listed the silencers as the "firearm[s]."

Comeaux moved to dismiss the indictment, asserting that § 5861(d) and (i) violates the Second Amendment on its face and as applied to him. The district court denied Comeaux's motion, explaining that silencers are "dangerous and unusual weapons" that are not protected by the Second Amendment.[1]

---

[1] The court assumed, without deciding, that silencers are Second Amendment "Arms."

No. 24-30307

Comeaux pleaded guilty of possession of unregistered firearms in violation of § 5861(d), reserving the right to press his constitutional challenge on appeal. The district court sentenced Comeaux to 24 months in prison and three years of supervised release.

## II.

We review preserved constitutional questions *de novo*, *United States v. Daniels*, 124 F.4th 967, 971 (5th Cir. 2025), *petition for cert. filed* (June 5, 2025) (No. 24-1248), and unpreserved challenges for plain error only, *United States v. Jones*, 88 F.4th 571, 572 (5th Cir. 2023) (per curiam). Comeaux raises a facial and as-applied challenge.[2]

## III.
### A.

The NFA, 26 U.S.C. §§ 5801–5872, requires the registration of statutorily defined firearms. *See United States v. Cox*, 906 F.3d 1170, 1174 (10th Cir. 2018). A "firearm" includes silencers. § 5845(a)(7). "No person shall make a firearm unless" he files "with the [Attorney General] a written application," identifies the firearm to be made, identifies himself and provides his fingerprints and photograph, pays a $200 tax,[3] and obtains "the approval of the [Attorney General] to make and register the firearm." §§ 5821, 5822, 7801(a)(2). It is "unlawful for any person" "to receive or possess a firearm

---

[2] The government contends that we may review Comeaux's as-applied challenge only for plain error because he did not raise it in the district court. But in his motion to dismiss, Comeaux stated that § 5861(d) "violate[s] the Second Amendment on [its] face and as applied to him[.]" The district court ruled on both challenges, holding that § 5861(d) was "lawful both facially and as applied in this case." Because Comeaux explicitly raised an as-applied challenge that the district court recognized and adjudicated, he preserved both his as-applied and facial challenges. *See Does 1–7* v. *Abbott,* 945 F.3d 307, 310 n.3 (5th Cir. 2019) (per curiam).

[3] Since Comeaux's arrest, the tax has been decreased to $0. *See* 26 U.S.C. § 5821.

3

which is not registered to him in the National Firearms Registration and Transfer Record." § 5861(d).

To be valid, however, firearms statutes such as the NFA must comply with the Second Amendment, which protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. In adjudicating Second Amendment claims, courts must employ the two-step analysis in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022).

*Bruen*, 597 U.S. at 24, first asks whether "the Second Amendment's plain text covers an individual's conduct." "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 28 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). In the Second Amendment sense, "Arms" comprises "weapons of offence," "armour of defence," and "anything that a man wears for his defence, . . . takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (citation modified). "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and courts proceed to Step 2. *Bruen*, 597 U.S. at 24.

*Bruen*'s second step asks "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) (citations omitted). "It is the government's burden to demonstrate that the challenged regulation is 'relevantly similar' to laws our tradition is understood to permit," and the government meets that burden "by finding and explicating 'historical precursors' supporting the challenged law's constitutionality." *Id.* (quoting *Bruen*, 597 U.S. at 29). "The challenged and historical laws are 'relevantly similar' if they share a common 'why' and 'how'"—that is, "they must both (1) address a comparable problem (the 'why') and (2) place a comparable

burden on the right holder (the 'how')." *Id.*; *see Bruen*, 597 U.S. at 27–30.

In *Peterson*, we reviewed a Second Amendment challenge to the silencer regulations in § 5861. 161 F.4th at 337–42. Peterson sold firearms to an undercover ATF agent without reporting the transaction as required by 27 C.F.R. § 478.126a. When ATF executed a search warrant on his home, they found a silencer that Peterson had made from a kit. Peterson pleaded guilty of possession of an unregistered silencer under § 5861(d) and appealed his conviction on Second Amendment grounds. *Id.*

*Peterson* assumed, without deciding, that silencers are "Arms" under the Second Amendment. *Id.* at 339. The panel held that the NFA's shall-issue silencer-registration regime is "presumptively lawful" and does not implicate the Second Amendment unless a rights claimant can show that the system "has been 'put toward abusive ends' through 'exorbitant fees' or 'lengthy wait times in processing license applications.'" *Id.* at 340 (quoting *Bruen*, 597 U.S. at 38 n.9). Peterson's challenge failed at Step 1 of *Bruen* because he "neither alleged that he applied for an NFA license to make a suppressor, nor asserted that he paid the $200 tax, nor claimed that the tax or application-processing times discouraged him from submitting an application to the ATF." *Id.* (citation modified).

The opinion was narrow, deciding "only that Peterson has failed to 'develop any argument' or record to show that the NFA is unconstitutional as applied to him." *Id.* at 341–42 (citing *United States v. Bridges*, 150 F.4th 517, 531 (6th Cir. 2025) (Nalbandian, J., concurring)). *Peterson* left open "the possibility that another litigant may successfully challenge the NFA's requirements." *Id.* at 341.[4]

---

[4] Because a facial challenge requires a claimant to "establish that no set of circumstances exists under which the Act would be valid[,]" *United States v. Rahimi*, 602 U.S.

No. 24-30307

### B.

Comeaux asserts that possessing silencers without registration "is protected by the plain text of the Second Amendment" and thus requires a *Bruen* Step-2 analysis.[5]

### 1.

*Peterson* left open the question whether silencers are Second Amendment "Arms." 161 F.4th at 339. They are.

Under the Second Amendment, "Arms" comprises "weapons of offence," "armour of defence," and "anything that a man wears for his defence, . . . takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (citation modified). To "bear arms," in sum, means to "wear, bear, or carry . . . for the purpose . . . of being armed and ready for offensive or defensive action in case of conflict with another person." *Id.* at 584 (ellipses in original).

Silencers fit that definition. Silencers lead to "reduced loudness (and reduced risk of hearing loss), lower recoil from the firearm, elimination of muzzle blast, increased accuracy, and faster follow-up shots."[6] Those are all

---

680, 693 (2024) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)), and an application of § 5861(d) was upheld in *Peterson*, 161 F.4th at 341–42, Comeaux's facial challenge fails.

[5] The statute itself defines silencers as "firearms." *See* 26 U.S.C. § 5845(a) ("The term 'firearm' means . . . (7) any silencer"). But just as the government could not evade Second Amendment scrutiny by calling firearms something else, defendants cannot invoke the Second Amendment's protections just because Congress has defined a targeted item as a firearm. The government correctly notes that "statutory labels are controlling for statutory purposes but not for constitutional purposes." Comeaux must therefore rely on Supreme Court precedent and history, not statutory labels.

[6] Justin Stevens, *Reloading the Second Amendment: The Undue Burdens of the National Firearms Act and Their Remedies,* 49 Tex. Tech L. Rev. 149, 164 (Online ed. 2017).

6

critical functions that make firearms both safer and more effective for their core lawful purpose of self-defense. Because silencers are used in self-defense "to cast at or strike another," they are Second Amendment "Arms."[7]

The government asserts that silencers are not "Arms" because, though useful, silencers are not necessary to the functioning of a gun and are not traditionally tied to militia service.[8] But claimants need not prove either of those factors to succeed.

First, *Bruen* explained that Second Amendment "Arms" need not be *necessary* for a firearm's functioning but instead must only "*facilitate* armed self-defense."[9] And second, the Supreme Court has cautioned lower courts against the trapped-in-amber approach that the government attempts to use by limiting the definition of "Arms" to those devices required for militia service at the Founding.[10]

Silencers are "Arms."

---

[7] *See Heller*, 554 U.S. at 581; *see also Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willett, J., concurring) ("[P]rotected Second Amendment 'conduct' likely includes making common, safety-improving modifications to otherwise lawfully bearable arms.").

[8] In initial briefing, the government asserted that silencers are not protected by the plain text of the Second Amendment. The government now posits that silencers fall within the plain text of the Amendment not because they are "Arms" but because they are accessories to arms.

[9] *Bruen*, 597 U.S. at 28 (emphasis added); *see also Heller*, 554 U.S. at 629 (holding that it was irrelevant that the Distrct of Columbia's "handgun" ban allowed citizens to possess substitutes, such as "long guns").

[10] *See Rahimi*, 602 U.S. at 691 ("[T]he reach of the Second Amendment is not limited only to those arms that were in existence at the founding."); *Bruen*, 597 U.S. at 28 ("[E]ven though the Second Amendment's definition of "arms" is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense.").

No. 24-30307

2.

Though silencers are Second Amendment "Arms," § 5861(d) must implicate an individual's ability to "keep and bear" them in order to proceed to Step 2 of *Bruen*.

Under our rule of orderliness, we are bound by *Peterson*,[11] which requires a challenger to the NFA's shall-issue silencer-registration regime show that the system "has been 'put toward abusive ends' through 'exorbitant fees' or 'lengthy wait times in processing license applications.'" 161 F.4th at 340 (quoting *Bruen*, 597 U.S. at 38 n.9). But Comeaux fails in the same way as did Peterson. Comeaux claims that the NFA is unconstitutional as applied to him because he seeks to possess silencers for the lawful purpose of self-defense. But he does not in any way rebut the presumption that the NFA's shall-issue regime is lawful by asserting that it is being put "toward abusive ends." Thus, Comeaux "cannot overcome that presumption because the record does not reveal that the NFA has effectively denied him his Second Amendment rights." *See id.* at 341. His challenge fails at *Bruen* Step 1. *See id.*

\* \* \* \* \*

Though silencers are Second Amendment "Arms," because Comeaux has not alleged that the NFA's shall-issue regime has been put toward abusive ends, he has not shown that § 5861(d) burdens his Second Amendment rights. The judgment of conviction is AFFIRMED.

---

[11] *See United States v. Mitchell*, 160 F.4th 169, 187 (5th Cir. 2025), *petition for cert. filed* (Feb. 5, 2026) (No. 25-935).

No. 24-30307

Edith Brown Clement, *Circuit Judge*, joined by Duncan, *Circuit Judge*, concurring.

The right to bear arms is a fundamental right, not a "second-class" one, that demands we show fidelity to the plain text of the Second Amendment and our Nation's history and tradition when reviewing challenges to firearm regulations. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (2022) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2012)). In *Bruen*, the Supreme Court eliminated any conceivable doubt about our proper method: History, not interest-balancing, must be our approach. As an intermediate appellate court, we must "interpret the meaning of the Constitution by examining its text and our Nation's historical tradition of firearm regulation under *Bruen*, while also adhering to our circuit precedent in this rapidly developing area of law." *United States v. Mitchell*, 160 F.4th 169, 194 (5th Cir. 2025), *petition for cert. filed* (Feb. 5, 2026) (No. 25-935). In executing this role, we rightly hold that silencers are protected "Arms" under the Second Amendment because they serve "critical functions that make firearms both safer and more effective for their core lawful purpose of self-defense." Thus, *lawful purpose*, not necessity, is the proper test when assessing whether firearm components, such as silencers, are entitled to constitutional protection. I gladly concur with this opinion.

I write separately to address a problem with our decision in *United States v. Peterson*, which held that *Bruen* imposes a "presumption of constitutionality for shall-issue licensing regimes." 161 F.4th 331, 341 (5th Cir. 2025), *cert. denied*, L. Ed. 2d 501 (2026). I join Judge Richardson of the Fourth Circuit in concluding that such a reading overextends *Bruen*'s dictum in footnote nine and, in turn, flips *Bruen*'s two-step analytical method on its head. *See Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 240–41 (4th Cir. 2024) (en banc) (Richardson, J., dissenting). *Peterson* ought to be revisited.

9

In footnote nine, the *Bruen* Court stated that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." 597 U.S. at 38 n.9. But *Bruen* did not analyze a shall-issue regime. *Bruen* involved a challenge to New York's requirement that applicants show a special need for self-protection to obtain a license for public carry, which was a type of "may-issue" licensing law. *Id.* at 12–15.

*Peterson* embraced footnote nine with open arms and read it to establish the presumptive constitutionality of shall-issue licensing regimes. "But read in context," footnote nine's "role was much more modest," as it simply "clarified that shall-issue licensing regimes are not necessarily unconstitutional just because may-issue regimes are." *Md. Shall Issue, Inc.,* 116 F.4th at 242 (RICHARDSON, J., dissenting). *Bruen* did not resolve the shall-issue regime question, but rather "invited courts to independently assess the pedigree of shall-issue licensing regimes against the historical record." *Id.* Yet *Peterson* stripped this court of its ability to independently conduct a history and tradition inquiry in a separate case, therefore tying our hands and forcing challengers to rebut this presumption. In so doing, *Peterson* traded history for dictum. *See United States ex rel. Schutte v. SuperValu Inc.,* 598 U.S. 739, 755 n.6 (2023) (cautioning against "read[ing] a footnote" in an opinion to "establish the general rule" for a line of cases); *see also Brown v. Davenport*, 596 U.S. 118, 141 (2022) (urging against snagging "stray comments and stretch[ing] them beyond their context—all to justify an outcome inconsistent with th[e] Court's reasoning and judgments").

By transforming footnote nine's dictum into doctrine, *Peterson* erected a new "half-step" between Step One and Step Two. *United States v. Speed*, 175 F.4th 272, 291 (4th Cir. 2026) (RICHARDSON, J., concurring). This new half-step requires Comeaux to overcome the NFA's presumptive constitutionality by showing that the NFA "has been 'put toward abusive ends' through 'exorbitant fees' or 'lengthy wait times in processing license

applications.'" *Peterson*, 161 F.4th at 340 (quoting *Bruen*, 597 U.S. at 38 n.9). So, Comeaux's challenge fails—not because of history and tradition—but because he does not rebut the *presumption* that the NFA's shall-issue regime is lawful by asserting that it is being "put toward abusive ends." *Bruen*, 597 U.S. at 38 n.9. This rule is incompatible with *Bruen*'s two-step method.

In effect, *Peterson*'s pronouncement of this half-step resurrects a repudiated form of interest-balancing, as it now greenlights a court's assessment of a law's "abusiveness," which can bring a *Bruen* challenge to an end. But such interest-balancing provides cover for judicial policymaking.

*Peterson* problems therefore abound. While this Court is bound by the rule of orderliness, *see Mitchell*, 160 F.4th at 187, *Peterson* requires revisitation. I urge the en banc court to recalibrate our Second Amendment jurisprudence to reflect text, history, and tradition—not interest-balancing.

Accordingly, I concur.

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 18, 2026

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW

Regarding:  Fifth Circuit Statement on Petitions for Rehearing
            or Rehearing En Banc

     No. 24-30307    USA v. Comeaux
                     USDC No. 6:23-CR-183-1

Enclosed is a copy of the court's decision.  The court has entered judgment under Fed. R. App. P. 36.  (However, the opinion may yet contain typographical or printing errors which are subject to correction.)

Fed. R. App. P. 39 through 41, and Fed. R. App. P. 39, 40, and 41 govern costs, rehearings, and mandates.  **Fed. R. App. P. 40 require you to attach to your petition for panel rehearing or rehearing en banc an unmarked copy of the court's opinion or order.**  Please read carefully the Internal Operating Procedures (IOP's) following Fed. R. App. P. 40 for a discussion of when a rehearing may be appropriate, the legal standards applied and sanctions which may be imposed if you make a nonmeritorious petition for rehearing en banc.

Direct Criminal Appeals.  Fed. R. App. P. 41 provides that a motion for a stay of mandate under Fed. R. App. P. 41 will not be granted simply upon request.  The petition must set forth good cause for a stay or clearly demonstrate that a substantial question will be presented to the Supreme Court.  Otherwise, this court may deny the motion and issue the mandate immediately.

Pro Se Cases.  If you were unsuccessful in the district court and/or on appeal, and are considering filing a petition for certiorari in the United States Supreme Court, you do not need to file a motion for stay of mandate under Fed. R. App. P. 41.  The issuance of the mandate does not affect the time, or your right, to file with the Supreme Court.

Court Appointed Counsel.  Court appointed counsel is responsible for filing petition(s) for rehearing(s) (panel and/or en banc) and writ(s) of certiorari to the U.S. Supreme Court, unless relieved of your obligation by court order.  If it is your intention to file a motion to withdraw as counsel, you should notify your client promptly, **and advise them of the time limits for filing for rehearing and certiorari**.  Additionally, you MUST confirm that this information was given to your client, within the body of your motion to withdraw as counsel.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Mary Frances Yeager, Deputy Clerk
504-310-7686

Enclosure(s)

Ms. Camille Ann Domingue
Mr. William A. Glaser
Mr. Thomas Forrest Phillips
Mr. Austin Piatt
Ms. Mahogane Denea Reed
Ms. Casey Richmond
Mr. Dustin Charles Talbot